IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JAMES BENNY JACKSON**                                                                 **PLAINTIFF**

**VERSUS**                                        **CIVIL ACTION NO.: 3:16cv189-DMB-RP**

**OIL-DRI CORPORATION OF AMERICA**                             **DEFENDANTS**
**AND BLUE MOUNTAIN PRODUCTION**
**COMPANY**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

COMES NOW Defendant, Blue Mountain Production Company ("BMPC"), and submits this Memorandum of Law in Support of Motion for Summary Judgment. In addition to this Memorandum, BMPC relies on its Motion for Summary Judgment and the exhibits thereto.

**I.    UNDISPUTED FACTS**

Plaintiff James "Benny" Jackson filed the instant lawsuit against his former employer BMPC, and its parent company, Oil-Dri Corporation of America,[1] alleging that BMPC failed to provide him with a reasonable accommodation in violation of the Americans with Disabilities Act ("ADA"). Doc. 1. As shown below, the facts and applicable law do not support any of Plaintiff's allegations and this case should be dismissed in its entirety.

BMPC is a clay mining and processing facility which primarily manufactures absorbent clay that is ultimately sold as cat litter. Ex. A at 24; Ex. M at ¶ 2. Plaintiff James "Benny" Jackson began his employment with BMPC as a chemical operator in 2000. Ex. A at 25. As the only chemical operator assigned to his shift, Plaintiff was responsible for preparing the products for packaging. Ex. A at 23-24, 29, 34; Ex. D at Ex. 10 thereto. Plaintiff claims that his job

---

[1] The parties filed a stipulation of dismissal of Oil-Dri Corporation of America. Doc. 70.

1

involved exposure to dusty conditions which caused him to experience "breathing difficulties." Ex. A at 36, 77; Doc. 1 at ¶ 5.

With regard to the alleged impairment that forms the basis of this lawsuit, Plaintiff first sought treatment for "cough and congestion" from Melinda Quinn, a family nurse practitioner, beginning on January 5, 2015. Ex. B at 19. Ms. Quinn diagnosed him with acute sinusitis and prescribed a course of treatment, but his issues did not resolve. Ex. B at 19. On March 31, 2015, Plaintiff contacted Ms. Quinn and requested a chest x-ray because he couldn't get rid of his cold. Ex. B at 21. The next day, Ms. Quinn saw Plaintiff in her office at which time he was complaining that the cough and congestion had persisted for three months. Ex. B at 20. During that visit, Plaintiff requested and received a referral to Dr. Wilons, a pulmonologist. Ex. B at 19-20, 22.

Approximately two weeks prior to Plaintiff's initial visit with Dr. Wilons and request for FMLA leave, Plaintiff was feeling ill and was worried that he had COPD based on his chest x-ray.[2]  Ex. A. at 53. Plaintiff spoke with Ms. Barnes, the Human Resources Coordinator, regarding "the fact that I could go on family medical leave . . . that there's a possibility that I could retire . . . [and] if I could come back, if I could work in a different area." Ex. A at 53; Ex. C at 4, 8. At this time, Ms. Barnes informed Plaintiff that the only available position at that time was in the shipping department. Ex. C at 8-9. No further discussion regarding the position occurred and Plaintiff did not apply for a position in the shipping department despite the fact that he was aware of the procedure for doing so. Ex. A at 65. No one was hired for this position until April 27, 2015, the day that Plaintiff requested FMLA leave. Ex. E.

---

[2] Dr. Wilons determined that Plaintiff does not suffer from COPD. Ex. F at 14.

Plaintiff saw Dr. Wilons on April 27, 2015, and he recommended that Plaintiff take FMLA leave. Following the appointment with Dr. Wilons, Plaintiff contacted Ms. Barnes by telephone and reported to her that Dr. Wilons told him that he "needed to be off work and … on family medical leave." Ex. A at 51. Ms. Barnes immediately informed him that the request was granted. Ex. A at 51-52.

Ms. Barnes then sent the necessary paperwork to Dr. Wilons' office. Ex. C at 6 and Ex. 1 thereto. According to the FMLA certification, Plaintiff was experiencing "chronic congestion and wheeze" and "need[ed] to be out of dusty environment to get control." Ex. C at Ex. 1 thereto. It was also noted that "his persistent bronchospasm is most likely related to the dust in his work environment." Ex. C at Ex. 1 thereto.

On July 15, 2015, Plaintiff returned to Dr. Wilons who released him to return to work. Ex. A at 55-56; Ex. C at 27. Dr. Wilons did not note any restrictions in his medical records with regard to Plaintiff's return to work and Plaintiff never provided any written documentation of any restrictions to BMPC. Ex. F at 18-20; Ex. M at ¶ 4. Dr. Wilons also sent the following correspondence dated July 21, 2015, to Plaintiff, with copy to Ms. Quinn, which states in pertinent part: "Dear Mr. Jackson, the protracted course of respiratory problems from December through May has completely cleared while away from the work environment. Your last pulmonary function test, 7/15/2015, was essentially back to normal." Ex. B at 24-25. The correspondence contains no mention of any work restrictions.

Upon leaving Dr. Wilons' office, Plaintiff called Ms. Barnes. According to Plaintiff, he asked Ms. Barnes whether there were any open positions to which she responded that there were not.[3] Ex. A at 57; Ex. M at ¶ 4. Plaintiff admitted that he cannot dispute Ms. Barnes

---

[3] Plaintiff has also alleged that he was denied the opportunity to transfer to a forklift operator position. However, there were no forklift operator positions available prior to Plaintiff's taking of FMLA

214024.2                               3

representation that there were no job openings at that time. Ex. A at 57, 64-65. Plaintiff then informed Ms. Barnes that was going to retire. Ex. A at 57; Ex. C. at 27. Thus, Plaintiff never returned to work following his FMLA leave. Ex. M at ¶ 3.

Unfortunately, Plaintiff made his decision to retire prior to submitting the required paperwork to the corporate office that was responsible for calculating retirement benefits. Ex. C at 28. Plaintiff admittedly did not undertake any action himself to determine whether he was in fact eligible for retirement benefits. Ex. A at 23. Rather, Plaintiff just assumed that he met the requirements. Ex. A at 91. However, after Plaintiff submitted his paperwork and the calculations were performed at the corporate office, it was determined that Plaintiff was just short of the required service time to be eligible for an early retirement.[4] Ex. D at Ex. 17 thereto.

Amanda Hill, Regional Human Resources Manager, contacted Plaintiff and asked him to come to the Ripley plant. Ex. A at 70; Ex. D at 4. Ms. Hill and Mr. Ron Parks, Vice President of Human Resources, met with Plaintiff and explained the situation to him. Ex. A at 71; Ex. D at 32-33; Ex. H at 4. Mr. Parks then offered Plaintiff the opportunity to return to work so that he could obtain the remaining service time necessary to be eligible for early retirement. Ex. D at 33 and Ex. 20 thereto. Plaintiff claims that he would have been required to return to the same position, an assertion which BMPC denies. Ex. A at 73; Ex. M at ¶ 6. However, it would not

---

leave, a period of time in which he was unable to work at all. Ex. G. Likewise, there were no forklift operator positions open on July 15, 2015, when Plaintiff informed Ms. Barnes that he was going to retire. Ex. G; Ex. C at 12.

Further, there is no evidence that Plaintiff was qualified to perform the job of a forklift operator. That fact would have to be determined by the supervisor in that area. Ex. C at 19. The fact that Plaintiff occasionally drove one type of forklift for his job does not render him qualified to be a full time forklift operator. Ex. D at 18.

[4] In order to receive early retirement benefits, Plaintiff needed 15 years of creditable service. At the time he retired, Plaintiff had 14.95 years of creditable service. Because retirement plans are governed by plan documents, BMPC could not just waive the remaining time and allow Plaintiff to receive the benefits. Accordingly, BMPC offered to allow Plaintiff to return to work so that he could obtain the necessary service time. Ex. M at ¶ 6.

have been possible for Plaintiff to return to his previous job, because that position had already been filled following Plaintiff's retirement. Ex. M at ¶ 6. It is undisputed that Plaintiff informed Ms. Hill and Mr. Parks that he needed to consider the offer because he was already receiving social security benefits and was working part-time as a school bus driver. Ex. A at 74; Ex. D at 33. Plaintiff declined the offer a few days later. Ex. A at 74; Ex. D at Ex. 21 thereto.

Contrary to the claims made by Plaintiff in this lawsuit, there are multiple representations in the record that he is not disabled. Dr. Wilons completed a questionnaire in connection with the settlement of Plaintiff's workers' compensation claims. In that questionnaire, Dr. Wilons stated that Plaintiff was unable to work from April 27, 2015 until June 30, 2015 and stated that he did not have any permanent restrictions. Ex. A at Ex. 8-A thereto; Ex. F at 21 and Ex. 4 thereto. In addition, Plaintiff represented to the Mississippi Department of Employment Security ("MDES") that he was not disabled. Ex. A at 81 and Ex. 4 thereto.[5] Dr. Wilons also signed a MDES Doctor's Certification form which states that he had released Plaintiff to return to his usual work and does not indicate any restrictions although a blank is provided for any explanation of same. Ex. A at 85-86 at Ex. 7 thereto. Notably, Plaintiff has never filed for social security disability and did not seek a disability based retirement. Ex. A at 82; Ex. M at ¶ 3.

Plaintiff designated six of his medical providers as experts in this case. Of these, four clearly testified that they have no opinion regarding whether Plaintiff suffers from any impairment that might constitute a disability under the ADA and that they had no opinion as to

---

[5] Plaintiff claims that an unidentified lady at MDES told him that "disabled" meant having filed for Social Security disability. Ex. A at 81. However, that is clearly not what the question asks. See Ex. A at 82 and Ex. 4 thereto.

214024.2     5

whether Plaintiff was substantially limited in any major life activity as of July 15, 2015.[6] Ex. I at 19-22; Ex. J at 19-25; Ex. K at 16-20; Ex. L at 14-17. Importantly, Ms. Quinn, who continues to treat Plaintiff, testified that his breathing issues do "affect his respiratory system, but not to the point that he is not able to function normally." Ex. B at 28-32 & 40.

Dr. Wilons testified that his opinion was limited to Plaintiff's pulmonary function and that with regard to Plaintiff's condition on July 15, 2015, he could not opine as to whether Plaintiff could perform his duties as a chemical operator or not. Ex. F at 22, 24-30. Although Dr. Wilons recalled discussing whether there was other work which would limit the exposure to the dust and chemicals with Plaintiff, he informed Plaintiff that "the only way we could tell the work was totally a problem that was causing your breathing issues is if you went back and started over." Ex. F at 18, 22. Dr. Wilons further testified:

> Q. You don't know whether if Mr. Jackson went back to work his problem would return?
>
> A. I did not know. That's how we determine that the environment is part of the problem.

Ex. F at 22. This testimony is further supported by the short-term disability form completed by Dr. Wilons that indicates that Plaintiff should be able to work in one to three months, but if the wheeze returns, then this could cause additional time away from the work environment. Ex. D at Ex. 14 thereto (DFTS 000007).

---

[6] Upon taking the medical providers' depositions, Defendant learned that none had been contacted by Plaintiff either before or after being designated to determine whether they had an opinion regarding whether Plaintiff suffers from any impairment that might constitute a disability under the ADA or whether Plaintiff was substantially limited in any major life activity as of July 15, 2015. When Defendant discovered this pattern, Defendant requested that Plaintiff reconsider his designation of experts so that the parties would not continue to waste resources in taking the expert's depositions, but Plaintiff refused. As a result, Plaintiff has unnecessarily multiplied proceedings in violation of 28 U.S.C. 1927 which has cost Defendant over $1,200 in court reporter's fees associated with the taking of the depositions (excluding Dr. Wilons' deposition) and in excess of $9,000 in attorneys' fees.

## II. LAW AND ARGUMENT

### A. Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Plaintiff bears the burden of proof at the summary judgment stage to show that BMPC's motion should not be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). He may not rest upon mere allegations or denials in his pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986). He must do more than allege that he "might could" show certain facts at trial. *Howard v. City of Greenwood*, 783 F.2d 1311, 1315-16 (5th Cir. 1986). The evidence must not be "merely colorable" but must be "significantly probative." *Liberty Lobby,* 477 U.S. at 249. "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Self-serving "allegations or affidavit or deposition testimony setting forth ultimate or conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (1997) (*citing Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995)). "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir.2010).

The Fifth Circuit Court of Appeals has specifically noted that the trial court should coordinate Rule 56 requirements with the allocation of the burden of proof at trial. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195-96 (5th Cir. 1986).

> If the movant ... does not bear the burden of proof, he should be able to obtain summary judgment simply by disproving the existence of any essential element of the opposing party's claim or affirmative defense . . . If the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a bootless exercise . . . .

*Id.* at 1194-95. Similarly, in *Galloway v. Travelers Ins. Co.*, 515 So. 2d 678, 684 (Miss. 1987), the Mississippi Supreme Court construed Rule 56 stating:

> When a party opposing summary judgment on a claim or defense as to which that party will bear the burden of proof at trial, fails to make a showing sufficient to establish an essential element of the claim or defense, then all other facts are immaterial, and the moving party is entitled to judgment as a matter of law.

In this case, BMPC is entitled to summary judgment because Plaintiff cannot establish that (1) Plaintiff is a qualified individual with a disability ; or (2) BMPC failed to accommodate him in violation of the ADA.

### B. BMPC Did Not Fail to Provide Plaintiff with a Reasonable Accommodation

"The ADA forbids covered employers from 'discriminat[ing] against a qualified individual on the basis of a disability' regarding the 'terms, conditions, and privileges of employment.'" *Patton v. Jacobs Engineering Group, Inc.*, 2017 WL 4784586, *3 (5th Cir. Oct. 24, 2017) (quoting 42 U.S.C. § 12112(a)). Discrimination in violation of the ADA can occur when an employer fails to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . , unless [the employer] can demonstrate that the accommodation would impose an undue hardship on [its] business." *Id.* 42 U.S.C. § 12112(b)(5)(A) (alterations in original).

In order to establish his failure to accommodate claim, Plaintiff must show that: "(1) [he] is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable

214024.2          8

accommodations" for such known limitations." *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (citation omitted) (alterations in original).

### 1. Mr. Jackson was not a qualified individual with a disability on July 15, 2015.

As an initial matter, the Court must determine whether Plaintiff was a qualified individual with a disability at the time he claims that BMPC failed to provide him with a reasonable accommodation. See *Moss*, F.3d at 418 (5th Cir. 2017). Plaintiff must establish that he is a qualified individual "by showing that "either (1) [he] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *Id*. (citations omitted).

The EEOC regulations define disability as an impairment which "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population….Nonetheless, not every impairment will constitute a disability." 29 C.F.R. § 1630.2(j)(1). Substantially limited means being unable to "perform a major life activity that the average person in the general population can perform or [being] significantly restricted in the ability to perform it." *EEOC v. Chevron Phillips Chemical Co.*, 570 F.3d 606, 615 (5th Cir. 2009).

The record evidence does not support a finding that Plaintiff's breathing issues constituted a disability. Dr. Wilons clearly testified that on July 15, 2015, Plaintiff's pulmonary function tests were normal. Dr. Wilons further testified that the only way to know whether Plaintiff was unable to perform his duties as a chemical operator would be to return him to the working environment to see if the bronchospasms recurred. This fact is further supported by Dr. Wilons' representation that Plaintiff was able to work with no restrictions in connection with

Plaintiff's workers' compensation claim settlement and his claim for unemployment benefits. Likewise, when seeking unemployment, Plaintiff represented to MDES that he was not disabled.

The evidence demonstrates that on July 15, 2015, Plaintiff was able to return work as a chemical operator. Although Dr. Wilons and Plaintiff purportedly discussed the possibility of working in another position, Dr. Wilons testified that he did not know whether that was even necessary. Regardless, Mr. Jackson voluntarily removed himself from the workforce when he chose to retire. As such, he is not a qualified individual with a disability.

Moreover, although Plaintiff designated multiple experts, not a single one testified that Plaintiff was substantially limited in his ability to breathe (or with regard to any other major life activity) on July 15, 2015.[7] Indeed, Ms. Quinn clearly testified that Plaintiff functions normally with regard to his respiratory system.

### 2. BMPC was not aware of any alleged disability or limitations on July 15, 2015.

On July 15, 2015, Plaintiff was released by Dr. Wilons to return to work. Plaintiff called Ms. Barnes and inquired as to whether there were other positions available at the time, but there were not. Neither Plaintiff nor his doctor ever provided any indication that Plaintiff could not perform his duties as a chemical operator on that day. Indeed, Dr. Wilons testified that in order to determine whether Plaintiff could return to his position, he would essentially have to "challenge it" to see if he developed any issues. This evidence is further supported by Plaintiff's and Dr. Wilons' repeated representations that Plaintiff is not disabled. According to Ms. Barnes, Plaintiff told her that he was fully released, but that he wanted to retire. Ex. C at 27. Thus, there

---

[7] BMPC anticipates that Plaintiff will argue that because he was still on medication at that time, then he was substantially limited in his ability to breathe. Dr. Wilons testified that Mr. Jackson was weaning of the medication and was only using inhalers at that time. He is currently not on any medication for the sinusitis and bronchospasms that he experienced in 2015. Ex. F at 28-29, 31.

is no evidence that could support a finding that BMPC was aware that Plaintiff was disabled on the day he was released to return to work.

### 3. BMPC did not fail to reasonably accommodate Plaintiff.

It is well-settled that the "ADA provides a right to reasonable accommodation, not the employee's preferred accommodation." *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009). Reasonable accommodations are adjustments that enable a disabled employee to perform the essential functions of the position or "reassignment to a vacant position" when no accommodation will allow an employee to perform the essential functions of his position. 42 U.S.C. § 12111(9)(B). However, a "plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform. A disabled employee has no right to a promotion, to choose what job to which he will be assigned or to receive the same compensation as he received previously." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (internal citations omitted).

An employer is required to engage in the interactive process to craft a reasonable accommodation. However, "an employer cannot be found to have violated the ADA when responsibility for the breakdown of the informal interactive process is traceable to the employee and not the employer." *Loulseged v. Akzo Nobel, Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) (court cannot determine what accommodations would have been made because employee quit); *Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 225 (5th Cir. 2011) ("Where an employee terminates the interactive process by voluntarily retiring, it is difficult to discern what measures may have been taken had accommodation discussions continued."); *Agro Distrib.*, 555 F.3d. at 471("The reasonable accommodation analysis is hindered because [the plaintiff] did not show up for work. Any discussion of the accommodations that might have been provided or denied is

mere speculation."); *Gordon v. Acosta Sales and Marketing, Inc.*, 622 Fed. Appx. 426, 430 (5th Cir. Aug. 14, 2015) ("[W]e need not address whether [the employer] provided a reasonable accommodation because we conclude that [the plaintiff's] unilateral withdrawal from the interactive process is fatal to his claim.").

Even assuming arguendo that Plaintiff was disabled on July 15, 2015, BMPC did not fail to reasonably accommodate him. The law is well-settled that a disabled employee is not entitled to the accommodation of his choice. The law is equally well-settled that an employer is not liable for a failure to accommodate claim when the employee is responsible for the breakdown in the interactive process.

BMPC reasonably accommodated Plaintiff when it granted him leave. *See Vanderberg v. Rexam Beverage Can Co.*, 2017 WL 507610, at *6 (N.D. Miss. Feb. 7, 2017) ("assuming that a leave of absence was a reasonable accommodation under the ADA, the plaintiff was in fact provided such accommodation"). Indeed, Plaintiff did not use all the leave that was available to him. After being released by his doctor, Plaintiff inquired about other positions on July 15, 2015 – apparently his accommodation of choice – but there were none open. Rather than return to work and continue the interactive process with BMPC to determine whether there were any other reasonable accommodations that would allow him to continue working in any capacity, Plaintiff chose to retire. As such, Plaintiff is responsible for any breakdown in the interactive process and BMPC cannot be held liable for his claim of a failure to accommodate. *See Griffin*, 661 F.3d at 225. It was only after Plaintiff realized that he was not actually eligible for early retirement that he filed an EEOC charge alleging disability discrimination.

III.     **CONCLUSION**

The undisputed facts and evidence in this case demonstrate that Plaintiff was not disabled within the meaning of the ADA on July 15, 2015. The undisputed facts and evidence further demonstrate that, even assuming Plaintiff was disabled, BMPC did not fail to reasonably accommodate Plaintiff. Plaintiff claims that he was unable to work as a chemical operator despite the fact that Dr. Wilons had not made that determination. On July 15, 2015, the day that Plaintiff was released to return to work, there were no other open positions available. Rather than continue to engage in the interactive process, Plaintiff chose to retire without even verifying his eligibility for benefits. In an effort to assist Plaintiff, BMPC offered him reemployment, but Plaintiff refused. These are not the actions of an employer who is discriminating against an employee. As such, any breakdown in the interactive process is a result of Plaintiff's actions. Thus, it is clear that BMPC did not violate the ADA and did not fail to reasonably accommodate Plaintiff.

Based on the foregoing, BMPC respectfully requests that this Court enter an Order granting summary judgment in BMPC's favor and dismiss Plaintiff's claims against BMPC in their entirety.

Respectfully submitted, this 6th day of November, 2017.

**BLUE MOUNTAIN PRODUCTION COMPANY**

BY:     s/ *Ashley Eley Cannady*

Armin J. Moeller, Jr., MSB#3399
Ashley Eley Cannady, MSB#101253
Balch & Bingham LLP
188 E. Capitol Street, Suite 1400
Jackson, MS 39201
Telephone: (601) 961-9900
Facsimile: (601) 961-4466
amoeller@balch.com
acannady@balch.com

14

**CERTIFICATE OF SERVICE**

I, the undersigned counsel, do hereby certify that on November 6, 2017, have electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

>Jim Waide
>Rachel Pierce Waide
>Ron L. Woodruff
>WAIDE & ASSOCIATES, P.A.
>332 North Spring Street
>Tupelo, MS 38804-3955

>>s/ *Ashley Eley Cannady*
>>Ashley Eley Cannady