IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**JAMES BENNY JACKSON**                                              **PLAINTIFF**

V.                                                              NO. 3:16-CV-189-DMB-RP

**OIL-DRI CORPORATION OF AMERICA
and BLUE MOUNTAIN PRODUCTION
COMPANY**                                                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This disability discrimination action is before the Court on the motion for summary judgment of Blue Mountain Production Company. Doc. #75.

### I
### Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper only when the record demonstrates that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law." *Luv N' Care Ltd. v. Groupo Rimar*, 844 F.3d 442, 447 (5th Cir. 2016). "A factual issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party, and material if its resolution could affect the outcome of the action." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226 (5th Cir. 2015) (quotation marks omitted). On a motion for summary judgment, a court must "consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor." *Edwards v. Cont'l Cas. Co.*, 841 F.3d 360, 363 (5th Cir. 2016).

In seeking summary judgment, "[t]he moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Nola Spice Designs,*

*L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quotation marks and alterations omitted). If the moving party satisfies this burden, "the non-moving party must go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (quotation marks omitted). "Where the nonmoving party bears the burden of proof at trial, the moving party satisfies this initial burden by demonstrating an absence of evidence to support the nonmoving party's case." *Celtic Marine Corp. v. James C. Justice Cos., Inc.*, 760 F.3d 477, 481 (5th Cir. 2014).

## II
## Factual Background

### A. The Parties

James Benny Jackson was born on June 4, 1953. Doc. #102-1 at 12. He completed high school and subsequently attended Northeast Mississippi Community College and the University of Mississippi without earning a degree. *Id.* at 20–21.

Blue Mountain Production Company ("BMPC") is a clay mining and processing facility which primarily manufactures absorbent clay which is later sold as cat litter. Doc. #75-13 at ¶ 2.

### B. Jackson's Position

In February of 2000, Jackson was hired by BMPC to work as a chemical operator. Doc. #102-1 at 23, 25. In this role, Jackson was "responsible for the material that the operators had to package. [He] had to make sure that the correct material went to the correct packing line and also had to make sure that any additives that were needed [were] put … there." *Id.* at 23–34. In sum, Jackson "was responsible for the quality" of the absorbent clay produced by BMPC. *Id.* at 24.

Jackson remained a chemical operator throughout his employment with BMPC. *Id.* at 26. However, at some point, his shift changed from the night shift, for which he was hired, to the day

shift. *Id*. at 27. Additionally, his "duties and responsibilities changed and evolved" over time. *Id*. at 25–26. Specifically, Jackson occasionally was assigned to mix dye. *Id*. at 25. Also, starting in about 2012, Jackson was called upon to perform lab technician duties on a "daily basis." *Id*. at 26–27. Jackson estimated that, on average, he spent approximately ten percent of his time in his office (a small room with control panels and a computer) and the remainder of his time on the "chemical platform" or the "packaging area." *Id*. at 32–33. When called upon to mix dye, he did so in the "dye room," also known as the "slurry room." *Id*. at 25.

The "chemical platform" was the location where BMPC mixed sprays, dust, and chemicals, to "put the recipe together for their blend." Doc. #77-6 at 7–8. Chemicals were also mixed in the slurry room. *Id*. at 16.

### C. Health Problems and Eventual Leave

Sometime between 2007 and 2012, Jackson contracted pneumonia and had to be hospitalized for eight days. Doc. #102-1 at 42–43. Sometime later, Jackson contracted pneumonia for a second time but recovered without hospitalization. *Id*. at 43.

In December of 2014, Jackson began to experience "asthma-like conditions." *Id*. at 44. Jackson went to see Melinda Quinn, a nurse practitioner, who treated Jackson for an upper respiratory infection. *Id*. at 44–45. Jackson's symptoms continued into January 2015. *Id*. at 45–46.

While at work one day in January 2015, Jackson developed a fever and chills. *Id*. at 46. Jackson told Tyler Cohea that he was sick and needed to go home. *Id*. Cohea granted this request. *Id*. Jackson then spoke with Quinn, who referred him to Tippah County Hospital for a chest x-ray.

3

*Id*. Jackson underwent the x-ray and was subsequently diagnosed with COPD.[1] *Id*. Quinn then referred Jackson to Dr. Michael Wilons, a lung specialist in Memphis. *Id*. at 47.

Prior to seeing Wilons, Jackson informed Rhonda Barnes, BMPC's Human Resources Coordinator,[2] that he was "very sick" and that he was concerned he would not be able to return to work. *Id*. at 52–53. Barnes informed Jackson that he could seek leave under the Family Medical Act and that there was a "possibility" he could retire. *Id*. at 53. Barnes and Jackson also discussed the potential for Jackson to work in a different area at BMPC "if [he] could come back." *Id*. at 53. Specifically, Jackson asked Barnes about positions that were open, and Barnes told Jackson that "if there were positions open …he could apply." Doc. #75-3 at 8.

On April 16, 2015, BMPC, which maintained a posting policy for job vacancies,[3] posted two job openings for shipping/receiving clerks. Doc. #102-5. Sometime later, Barnes notified Jackson of the shipping vacancies. Doc. #75-3 at 12; Doc. #102-1 at 115. Jackson offered to take the job and Barnes replied, "I don't see how you could take that big a pay cut." Doc. #102-1 at 115. Jackson replied that he "would be willing to take a significant pay cut if it meant me still being able to work and keep my benefits …." *Id*. When Barnes asked how large a pay cut Jackson would be willing to accept, Jackson said three or four dollars an hour. *Id*. at 115–16. At some point during the conversation, Barnes informed Jackson that the positions would be posted. Doc. #75-3 at 9.

---

[1] COPD is an acronym for chronic obstructive pulmonary disease, a "general term used for those diseases with permanent or temporary narrowing of small bronchi, in which forced expiratory flow is slowed, especially when no etiologic or other more specific term can be applied." Stedmans Medical Dictionary § 253710; *see Roth v. 2810026 Canada Ltd.*, No. 13-cv-901, 2017 WL 4310689, at *22 n.36 (W.D.N.Y. Sep. 28, 2017) (court may take judicial notice of "well-established" medical facts) (collecting cases).

[2] Doc. #75-13 at ¶ 2.

[3] Doc. #77-1 at 65.

Ultimately, Jackson never applied for either position. 102-1 at 65. Jackson explained that, at the time, BMPC maintained a non-demotion policy which prohibited bidding on jobs with an equal or lower paygrade, and that the shipping positions were lower paygrades than his current position.[4] *Id*. at 100–01. The positions were eventually filled on April 27, 2015, and June 15, 2015. Doc. #102-6.

Also in April 2015, Wilons diagnosed Jackson with mild COPD,[5] sarcoidosis (a disease ordinarily of the lungs),[6] and asthma. Doc. #102-1 at 47. Wilons prescribed Jackson inhalers, Prednisone, Qnasl, and Symbicort, and recommended that Jackson temporarily remove himself from the environment to which he had been exposed. *Id*. at 48. Subsequently, Jackson requested and received leave under the Family and Medical Leave Act, retroactive to April 27, 2015. Doc. #75-13 at ¶ 3.

### D. Leave and Eventual Retirement

On June 17, 2015, while Jackson was on leave, BMPC posted a vacancy for a forklift driver. Doc. #102-10. Jackson was never informed of the vacancy, which was eventually filled on July 7, 2015. Doc. #102-1 at 115; Doc. #102-10. Additionally, at some point when he was on leave, Barnes told Jackson that he could retire at any time but that BMPC "did not have another job that they could offer …." Doc. #102-9 at 12.

By July of 2015, Jackson was off steroids but continued using a long acting inhaler and a rescue inhaler. Doc. #102-8 at 29. Wilons characterized Jackson's respiratory system as "under control on medication." *Id*. at 28. At this point, Wilons believed Jackson "was not limited from a

---

[4] Barnes testified that no such policy existed. Doc. #105-2 at 15. For the purpose of this summary judgment motion, the Court resolves this factual dispute in favor of Jackson.

[5] During his deposition, Wilons called into question whether Jackson suffered from COPD. Doc. #102-8 at 14.

[6] Stedmans Medical Dictionary § 796640.

5

pulmonary standpoint." *Id*. at 29. On or about July 15, 2015, Wilons released Jackson to return to work, with the suggestion that he "not be exposed to the same environment" as before.[7] Doc. #102-1 at 55–56.

The same day he was released, Jackson called Barnes and asked her if "anything changed as far as any job openings that [he] could do." *Id*. at 57. Barnes said no, and Jackson said "if that was the case, … I'd just go ahead and retire." *Id*. Barnes, for her part, remembered that Jackson stated he was "fully released and that he wanted to retire." Doc. #102-4 at 27.

Approximately two weeks after Jackson retired, BMPC posted a vacancy for a forklift operator. Doc. #102-11. Jackson did not apply for the vacancy and the position was filled on August 18, 2015. *Id*.

### E. Attempt to Return to Work

In September 2015, Jackson called Barnes and asked when he could expect his retirement benefits. Doc. #102-1 at 70–71. Sometime later, Jackson received a call from Amanda Hill requesting a meeting at the plant. *Id*. Jackson then met with Hill and Ron Parks. *Id*. at 71. At this meeting, Hill and Parks informed Jackson that he had not worked the requisite hours to receive retirement benefits but that he could return to work to fulfill the required service time. *Id*. at 71–74. Jackson inquired what work he would be doing and Hill and Parks responded that, because of a staffing shortage, he would be "doing the same job." *Id*. at 74. Jackson requested and received some time to consider his options but ultimately informed BMPC that he would not return. *Id*. at 74–75.

---

[7] Jackson testified that Wilons restricted him from working in the environment. This testimony is inadmissible hearsay. *See Muray v. Red Kap Indus. Inc.*, 124 F.3d 695, 698 (5th Cir. 1997) (testimony about doctor's statements regarding ability to work was "immaterial, conclusory, and/or hearsay."). Wilons' notes from the July 15, 2015, appointment contain no reference to a restriction. *See* Doc. #102-7. However, Wilons noted that "staying out of the work environment will keep him from requiring pulmonary medications to control his breathing." *Id*.

6

After this conversation, BMPC posted forklift operator vacancies on October 1, 2015, October 19, 2015, and December 15, 2015. Doc. #102-3 at 2. Each position was eventually filled without Jackson applying. *Id* at 2–3.

### F. EEOC Charge and This Action

Jackson filed a charge of discrimination with the Equal Employment Opportunity Commission on October 19, 2015. Doc. #1-1.[8] The charge alleges disability discrimination beginning in November of 2014 and ending on July 15, 2015. *Id*. Specifically, it alleges that BMPC "had available work in the shipping department, and may have had available work as a forklift operator … [but] would not give me either one of these positions." *Id*. The EEOC issued a notice of right to sue on May 27, 2016. Doc. #1-2.

On August 12, 2016, Jackson filed this action. Doc. #1. The complaint alleges a claim for refusal to grant a reasonable accommodation as required by the Americans with Disabilities Act against both BMPC and Oil-Dri Corporation. *Id*. at ¶ 9. After waiving service, BMPC and Oil-Dri answered the complaint on November 18, 2016. Doc. #7.

On November 1, 2017, Jackson and Oil-Dri stipulated to the dismissal of the claims against Oil-Dri. Doc. #70. Five days later, BMPC moved for summary judgment on Jackson's reasonable accommodation claim. Doc. #75. Jackson responded in opposition to the motion on November 14, 2017. Doc. #77. This Court struck Jackson's response as insufficient and allowed him the opportunity to file an amended response on or before April 12, 2018. Doc. #99.

---

[8] The EEOC Charge and the Right to Sue are both attached to Jackson's complaint and referenced in the summary judgment papers. The Court deems them part of the summary judgment record. *See Olguin v. Wathen*, No. 7:02-cv-168, 2003 WL 22137482, at *1 (N.D. Tex. Sept. 16, 2003) (considering exhibits attached to complaint on motion for summary judgment).

Jackson filed his amended response on April 12, 2018, and BMPC replied one week later.[9] Doc. #102; Doc. #105.

### III
### Analysis

"The ADA requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016) (quoting 42 U.S.C. § 12112(b)(5)(A) (alterations omitted)). Additionally, "once an employee has made a request for an accommodation, it may be necessary for the employer to initiate an informal, interactive process with the qualified individual with a disability … in order to craft a reasonable accommodation." *Molden v. E. Baton Rouge Parish Sch. Bd.*, 715 F. App'x 310, 315–16 (5th Cir. 2017) (quotation marks omitted). "[A]n employer violates the ADA when the employer's unwillingness to engage in a good faith interactive process *leads to* a failure to reasonably accommodate an employee." *Id*.

In its motion for summary judgment, BMPC argues that Jackson's ADA claims must fail because he was not a qualified individual with a disability and because it provided reasonable accommodations. Jackson argues that he is entitled to recover under the related theories of failure to accommodate and failure to engage in an interactive process. Because this Court concludes that Jackson is not and was not disabled within the meaning of the ADA, both theories of recovery must fail.

#### A. Failure to Accommodate

To prevail on a failure to accommodate claim, a plaintiff must show: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were

---

[9] Oil Dri replied to the original response on November 21, 2017. Doc. #79.

8

known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quotation marks omitted). The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment …." 42 U.S.C. § 12102(1).

"[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "In determining whether an individual is substantially limited in a major life activity, the EEOC advises that courts should consider: [i] the nature and severity of the impairment, (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614–15 (5th Cir. 2009) (quotation marks omitted). A court must make a

> determination of whether an impairment substantially limits a major life activity … without regard to the ameliorative effects of mitigating measures such as–
>
> (I) medication, medical supplies, equipment, or appliances, low-vision devices (which do not include ordinary eyeglasses or contact lenses), prosthetics including limbs and devices, hearing aids and cochlear implants or other implantable hearing devices, mobility devices, or oxygen therapy equipment and supplies;
> (II) use of assistive technology;
> (III) reasonable accommodations or auxiliary aids or services; or
> (IV) learned behavioral or adaptive neurological modifications.

42 U.S.C. § 12102(4)(E).

In its summary judgment memorandum, BMPC argues that "[t]he record evidence does not support a finding that Plaintiff's breathing issues constituted a disability." Doc. #76 at 9. As support for this contention, BMPC points to testimony from Wilons that, as of July 15, 2015, Jackson's respiratory issues were "under control on medication," and testimony from Quinn that Jackson's breathing was not substantially impaired. Jackson responds that there is a genuine issue of material fact as to whether he is disabled because the breathing issues substantially limit his abilities to breathe and work. Doc. #103 at 6–7. Jackson further contends that since he "was unable to work from sometime in April 2015 until July 15, 2015, he also has a record of having had a disability within the definition of 42 U.S.C. § 12102(1)(B)." *Id*. at 7.

### 1. Breathing

In his amended response, Jackson cites no evidence that his breathing was substantially impaired. Rather, he argues only that "[w]hether [his] breathing problems … amoun[t] to a substantial limitation on his life activities is a question of fact for the jury." Doc. #103 at 7. As support for this proposition, Jackson cites a series of cases in which courts found a genuine issue of material fact as to whether a disability substantially limited a life activity. *Id*. However, each case relied on by Jackson involved specific evidence that the claimed disability *actually* limited the specific activity.[10]

---

[10] *See Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 22 (1st Cir. 2004) ("[N]either the district court nor the appellees here have contested Calero's assertion that her major depression substantially limited one or more of her recognized major life activities. Given this, we must conclude by default that the evidence was sufficient …."); *Hoskins v. Oakland Cty. Sheriff's Dep't*, 227 F.3d 719, 725 (6th Cir. 2000) ("Hoskins has raised a genuine issue of material fact regarding whether her impairment substantially limits the major life activities of breathing, moving, and performing manual tasks such as doing laundry. According to Hoskins's testimony, both the manner and duration under which she can perform these major life activities are significantly restricted.") (footnote omitted); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 781 (6th Cir. 1998) ("Because the psoriasis causes persistent skin irritations, Cehrs is constantly afraid of other people's reactions to her condition. Her entire appearance, including the clothes she wears, is dictated by her psoriasis. Accordingly, … Cehrs has raised a genuine issue of material fact regarding whether her psoriasis substantially limits the major life activities of being able to care for herself and to work."); *Roush v. Weastec, Inc.*, 96 F.3d 840, 844 (6th Cir. 1996) ("[P]laintiff testified that this condition causes her substantial pain such that she can not engage in a major life activity, work, without medication. Even with medication,

"Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Mann v. La. High Sch. Athl. Ass'n*, 535 F. App'x 405, 411 (5th Cir. 2013). Accordingly, and of relevance here, "[w]hile asthma, allergies and 'bronchitis-related conditions' are physical impairments that can affect an individual's major life activity of breathing, these illnesses present in varying levels of severity and [a plaintiff] must still prove that her condition, be it asthma, allergies or bronchitis, substantially limits her ability to breathe." *Goodbolt v. Trinity Protection Servs., Inc.*, No. 14-3546, 2017 WL 2579020, at *10 (D. Md. June 12, 2017) (quotation marks and alterations omitted).

Here, unlike the cases relied on by Jackson, there is simply no evidence from which this Court can find that Jackson was substantially limited in his ability to breathe. First, Jackson's condition is indisputably related to the dust at his employment and numerous courts have held that "individuals suffering from respiratory sensitivity to airborne agents [can]not show a substantial limitation on the major life activity of breathing within the meaning of the ADA[]" when the agents only exist at his place of work. *Jimenez-Jimenez v. Int'l Hosp. Grp., Inc./Casino del Sol*, No. 15-1461, 2017 WL 5905529, at *8 (D.P.R. Nov. 30, 2017) (collecting cases). Furthermore, at most, the evidence supports a finding that, due to his employment, Jackson had mild COPD, sarcoidosis, and asthma, which resulted in "asthma-like conditions" of unknown severity. Accordingly, the

---

plaintiff claims she suffers pain. Further, plaintiff's doctor testified that she visits his office monthly or semi-monthly for the treatment of infections and pain caused by this condition. [T]herefore, … plaintiff has created an issue of material fact as to whether her bladder condition substantially limits her working."); *McDonald v. Ford Motor Co.*, 208 F.Supp.2d 837, 841 (N.D. Ohio 2002) ("Plaintiff contends he was diagnosed with a flat arch in his left foot in middle school and had to wear corrective shoes for many years. He contends the condition never was corrected and still suffers from pain in his foot. He also contends the military refused to accept him because of his back and foot conditions."); *Keck v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 10 F.Supp.2d 194, 200 (N.D.N.Y. 1998) ("The record also supports the conclusion that exposure to perfume causes symptoms in Keck severe enough to be disabling.").

11

Court cannot conclude that there is a genuine issue of material fact as to whether his ability to breathe was substantially limited.

## 2. Ability to work

Jackson argues that his approximate four-month absence from his job shows that he is substantially limited in his ability to work and that he has a record of having such a limitation.[11] BMPC responds that Jackson's absence was due to his inability to perform his specific job and that "a plaintiff who claims that his disability prevents him from performing only one job because of its environment, but that he can perform other jobs outside of its environment is not substantially limited in the ability to work." Doc. #105 at 7 (citing *Bleak v. Providence Health Ctr.*, 454 F. App'x 366, at *3 (5th Cir. 2011), and *Ballard v. N. Miss. Health Servs.*, No. 1:07-cv-95, 2008 WL 4603315, at *3–4 (N.D. Miss. Oct. 15, 2008)).

Both *Ballard* and *Bleak*, the cases cited by BMPC, relied on a since-abolished regulation, § 1630.2(j)(3), which provided: "With respect to the major life activity of working … the term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *See Ballard*, 2008 WL 4603315, at *3; *Bleak*, 454 F. App'x at 368–69. However, the Appendix to the current Part 1630 provides:

> In the rare cases where an individual has a need to demonstrate that an impairment substantially limits him or her in working, the individual can do so by showing that the impairment substantially limits his or her ability to perform a class of jobs or broad range of jobs in various classes as compared to most people having

---

[11] The "record of" prong is "tailor-made for plaintiffs who … claim they once suffered from a physical or mental impairment that substantially limited a major life activity, recovered from the impairment, but nonetheless faced employment discrimination because of it." *Adams v. Rice*, 531 F.3d 936, 945–46 (D.C. Cir. 2008). "[I]n order to make out a claim for discrimination based on a record of impairment, the plaintiff must show that at some point in the past, she was classified or misclassified as having a mental or physical impairment that substantially limits a major life activity." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1120–21 (5th Cir. 1998).

12

> comparable training, skills, and abilities. In keeping with the findings and purposes of the Amendments Act, the determination of coverage under the law should not require extensive and elaborate assessment, and the EEOC and the courts are to apply a lower standard in determining when an impairment substantially limits a major life activity, including the major life activity of working, than they applied prior to the Amendments Act. The Commission believes that the courts, in applying an overly strict standard with regard to "substantially limits" generally, have reached conclusions with regard to what is necessary to demonstrate a substantial limitation in the major life activity of working that would be inconsistent with the changes now made by the Amendments Act. Accordingly, as used in this section the terms "class of jobs" and "broad range of jobs in various classes" will be applied in a more straightforward and simple manner than they were applied by the courts prior to the Amendments Act.
>
> Demonstrating a substantial limitation in performing the unique aspects of a single specific job is not sufficient to establish that a person is substantially limited in the major life activity of working.

29 C.F.R. § Pt. 1630, App. (footnote omitted).

While the Fifth Circuit appears to have not yet addressed the impact of the ADAAA on the substantial work limitation analysis, it has continued to apply the "class of jobs" inquiry for the purpose of determining whether an employer regarded an employee as substantially limited in his ability to work. *Arthur v. BNSF Ry. Co.*, 697 F. App'x 826, 830 (5th Cir. 2017). Consistent with this approach, and in light of the plain language of the Appendix's interpretive guidelines, numerous courts have held that "to show a disability in the major life activity of working, … [a plaintiff is] required, even after the enactment of the ADAAA and the modified EEOC regulations, to demonstrate that she was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities." *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 835 (10th Cir. 2011); *see Anderson v. National Grid, PLC*, 93 F.Supp.3d 120, 137–38 & n.11 (E.D.N.Y. 2015) (considering impact of change in regulations); *Presta v. Omni Hotels Mgmt. Corp.*, No. 4:17-cv-912, 2018 WL 1737278, at *8 (S.D. Tex. Apr. 4, 2018) (relying on Interpretive Guidance). Considering this authority, this Court

concludes that for Jackson to show that he is (or was) substantially limited in his ability to work, he must show that he was substantially limited in performing a class of jobs or broad range of jobs in various classes as compared to most people with comparable training, skills, and abilities. For the purpose of this inquiry, a "class of jobs includes jobs utilizing similar training, knowledge, skills or abilities, within that geographical area." *Arthur*, 697 F. App'x at 830 (quotation marks omitted). .

While the record may support a finding that Jackson was substantially limited in his ability to perform his specific job of chemical operator, there is no evidence that he was substantially limited in performing a class or broad range of jobs. In the absence of such evidence, the Court must conclude that there is no genuine issue of material fact as to whether Jackson was substantially limited in his ability to work or that he has a record of such impairment. *Compare Keck v. N.Y. State Office of Alcoholism & Substance Abuse Servs.*, 10 F.Supp.2d 194, 200 (N.D.N.Y. 1998) ("[F]ailure to allege specific evidence of the extent to which other jobs are foreclosed … is generally fatal at the summary judgment stage) *with Transue v. Curtiss-Wright Flow Control Corp.*, No. 1:14-cv-1135, 2016 WL 1704231, at * 5–6 (N.D. Ohio Apr. 28, 2016) (genuine issue of material fact as to whether allergy to machine coolant substantially limited ability to work where expert opined that plaintiff would be "precluded from any occupation in the machining field as a result of her allergy"). Since there is no genuine issue of material fact as to whether Jackson was substantially limited in his abilities to breathe or work, summary judgment on his failure to accommodate claim is warranted.

### B. Failure to Engage in Interactive Process

As explained above, a plaintiff may proceed on a failure to engage in an interactive process claim when the failure leads to a failure to accommodate. *Molden*, 715 F. App'x at 315–16.

Because this Court has concluded that Jackson's failure to accommodate claim must fail, summary judgment is also warranted on the interactive process claim.

## IV
## Conclusion

For the reasons above, BMPC's motion for summary judgment [75] is **GRANTED**. This action is **DISMISSED with prejudice**. A final judgment consistent with this opinion will issue separately.

**SO ORDERED**, this 27th day of April, 2018.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**